UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CURTISS EBRON | : |
| | :  PRISONER |
| v. | :  Case No. 3:04CV1375(MRK) |
| | : |
| THERESA LANTZ, et al. | : |

## RULING AND ORDER

Plaintiff Curtiss Ebron is confined at the Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut. He brings this civil rights action under 42 U.S.C. § 1983 *pro se* and *in forma pauperis*, alleging that Defendants[1] discriminated against him and violated his First, Sixth, Eighth, and Fourteenth Amendment rights while he was confined at the Carl Robinson Correctional Institution. Defendants move to dismiss this action [doc. #14]. For the reasons that follow, Defendants' motion is granted.

**I**

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). Dismissal is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim entitling him to relief. *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York v. Assoc. of Bar of City of New York*, 286 F.3d 122, 125

---

[1] The named Defendants are Commissioner Theresa Lantz, Warden John Sieminski and Major Jose A. Feliciano, Jr. All Defendants are named in their individual and official capacities.

(2d Cir. 2002) (internal quotation marks omitted).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted).

**II**

Mr. Ebron submitted his original complaint [doc. #1] on August 18, 2004, and an amended complaint [doc. #7] on November 29.  Defendants moved to dismiss [doc. #14] on March 10, 2005.  The Court issued an Order of Notice to Pro Se Litigant [doc. #15] on March 17, and after receiving an extension of time, Mr. Ebron responded to the motion to dismiss on June 13 [doc. #19].

Mr. Ebron's complaint lists a string of grievances, many of which are difficult to understand or not fully formed.  The Court has done its best to discern the allegedly objectionable behavior behind them.  For the purposes of deciding this motion, the Court assumes that the following allegations contained in the complaint are true.

1. On an unspecified date, staff at Carl Robinson Correctional Institution allowed an inmate on the compound who had been "profiled" from a May 16, 2003, event at Corrigan-Radgowski Correctional Institution.

2. On October 30, 2003, Mr. Ebron spoke with a disciplinary report investigator regarding gang activities in the prison dormitory on October 23, 2003.  After the investigation was concluded,

Captain Case, who is not a defendant in this case, sent three gang members back to the same dormitory as Mr. Ebron. These inmates were aware that Mr. Ebron was a confidential informant and have threatened him.

3. Grievances that Mr. Ebron filed on August 12, 2003, and September 12, 2003, were denied. Major Feliciano retaliated against him for exercising his rights to access the courts, for "present[ing] grievances to the administration at Carl Robinson Correction Institution, Commisioner(s) office (Theresa Lantz) and the Dept. of Corr. Intelligence Division, Central Office at Wethersfield Ct." Amended Complaint [doc. #7].

4. Although Mr. Ebron previously had been promised 120 days of good-time credit, he was offered only fifteen days of good-time credit.

5. Mr. Ebron wrote letters to the Connecticut State Police and "affirmative action." The letters were returned to defendant Warden Sieminski, "[f]urther leaving the Plaintiff open for retaliation and directed abuse."

6. On November 12, 2003, two dormitory officers not named as defendants referred to Mr. Ebron as a "snitch" and also used racial epithets.

7. All defendants retaliated against Mr. Ebron by not allowing him to prepare for a March 14, 2004, parole hearing. Parole Officer Rutkis, who is not a defendant in this case, denied Mr. Ebron a parole interview to prepare a package to present to the Parole Board. There was no documentation regarding Mr. Ebron's rehabilitation, accomplishments, or Outstanding Meritorious Performance Awards. Mr. Ebron wrote letters to Officer Rutkis on June 23, 25, and 29, 2004, asking why Mr. Ebron had received no help in preparing for the hearing. Officer Rutkis did not respond. On July 5, 2004, Mr. Ebron wrote a letter to Governor Rell. The letter was referred to Commissioner

Lantz, who referred the letter to Officer Rutkis for response. Mr. Ebron alleges that he was denied assistance to prepare a parole package because he had received a cash settlement from the Department of Correction in another case.

8. Mr. Ebron alleges that he is being housed in the "Annex building/Cell block aka a death trap" because he has filed lawsuits against the Department of Correction. *Id.* at 3.

Mr. Ebron states that he brings this action to redress racial discrimination and violations of rights protected by the First, Sixth, Eighth, and Fourteenth Amendments. He seeks damages and an order transferring him to a Level 2 facility. Defendants have moved to dismiss all claims.

**III**

The Court construes Mr. Ebron's complaint as seeking to establish the following claims: (1) that he was unfairly deprived of good-time credits; (2) that he was verbally harassed by state officials; (3) that he was retaliated against because of the lawsuits and grievances he has filed; and (4) that state officials have failed to protect him.

Before addressing those claims, the Court notes that the Eleventh Amendment bars any claims for damages against the Defendants in their official capacities. The Eleventh Amendment generally prevents a plaintiff from suing the state itself, or any state agency or department, unless the state has waived its immunity. *See In re Charter Oak Associates*, 361 F.3d 760, 765 (2d Cir. 2004). That the plaintiff sues under § 1983 does not override this immunity. *See Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). Moreover, the Eleventh Amendment also forbids damages suits against state officials in their official capacities. *See Muntaqim v. Coombe*, 366 F.3d 102, 129 (2d Cir. 2004).

Mr. Ebron names all Defendants in their official and individual capacities and does not state

that he seeks damages from Defendants in their individual capacities only. To demonstrate that he may sue state officials in their official capacities, Mr. Ebron refers the court to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). *Monell* holds that the Eleventh Amendment does not protect local government officials from suit for damages in their official capacities. Mr. Ebron, however, is suing state officials, not local government officials.

Thus, to the extent that the amended complaint may be construed as seeking damages from Defendants in their official capacities, this relief is barred by the Eleventh Amendment. Defendants' motion to dismiss is granted as to all claims for damages against them in their official capacities. The Court will next consider Mr. Ebron's claims against the Defendants in their individual capacities.

**A. Good-Time Credits**

Mr. Ebron alleges that Defendants have not awarded him 120 days of good-time credits as promised. Prisoners do have a constitutional right to good-time credits that have already been earned. *See Abed v. Armstrong*, 209 F.3d 69, 66-67 (2d Cir. 2000). However, § 1983 is not the proper vehicle for Mr. Ebron to seek redress for his alleged good-time credit deprivation. In a series of cases recently discussed by this Court, *see Burnell v. Whidden*, No. 3:05CV825, 2005 WL 2739085, at *2-*3 (D. Conn. Oct. 19, 2005), the Supreme Court has limited the right of prisoners to use § 1983 to challenge aspects of their confinement. In *Wilkinson v. Dotson*, 125 S. Ct. 1242 (2005), the Supreme Court explained that where "'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction,' a § 1983 action will not lie 'unless . . . the conviction or sentence has already been invalidated.'" *Id.* at 1247 (internal citations omitted) (quoting *Heck v. Humphrey*, 512 U.S. 477, 481-82, 487 (1994)). Applying this principle in *Edwards v. Basilok*, 520 U.S. 641 (1997), the Supreme Court held that a petition for a writ of habeas corpus was

5

a prisoner's sole recourse in challenging the procedures used to deny him good-time credits. The Court explained that "the principal procedural defect complained of by the respondent, would, if established, necessarily imply the invalidity of the deprivation of his good-time credits," which would in turn decrease the duration of his confinement. *Id.* at 646. Similarly, Mr. Ebron's allegation, if proven, would necessarily show that he was entitled to speedier release, and so he must pursue his claim through a petition for a writ of habeas corpus. Therefore, the portion of his complaint seeking the good-time credits he had earned is dismissed with prejudice.

### B. Verbal Harassment

Ebron alleges that two correctional officers who are not defendants in this case referred to him as a "snitch" and made unspecified racially derogatory remarks. He does not indicate how any of the Defendants were involved in these incidents, which is reason enough to dismiss his claim. To the extent that this claim could relate to any of the Defendants, however, it is not cognizable under § 1983.

Verbal harassment does not rise to the level of a constitutional violation. *See Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does not rise to the level of a constitutional violation"); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (same); *Cuoco v. U.S. Bureau of Prisons*, No. 98 CIV. 9009, 2001 WL 167694, at *3 (S.D.N.Y. Feb. 16, 2001) (holding that, although abhorrent, verbal harassment and profanity do not violate an inmate's constitutional rights); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (same). Because the verbal harassment and derogatory remarks alleged do not constitute a constitutional violation, Defendants' motion to dismiss is granted with prejudice as to the verbal harassment claim.

**C. Retaliation Claims**

Mr. Ebron makes several allegations that he was retaliated against for filing lawsuits and grievances against the Department of Correction and its officials. He alleges that "major Feliciano retaliated against [him] when he exercised his rights to access the court, [and] presented grievances to the administration." Am. Compl. [doc. #7] at 2. He maintains that his letters to the Connecticut State Police and "affirmative action" were returned to Warden Sieminski. He claims that he was denied assistance in preparing a parole package; that information regarding his "rehabilitation, accomplishments, or Outstanding Meritorious Performance Awards," was absent; and that his inquiries about the lack of assistance were never answered. Finally, he alleges that he has been housed in the "Annex building/Cell block aka a death trap" as punishment for his litigiousness. Am. Compl. [doc. #7] at 3.

To state a claim for retaliation, Mr. Ebron must allege facts demonstrating "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). Generally, a plaintiff can withstand a motion to dismiss, or for judgment on the pleadings, if he alleges facts that, if proven, would support the cause of action. Because of the "ease with which claims of retaliation may be fabricated," however, the Court "examines prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "To survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (internal quotation marks omitted).

At the outset, the Court notes that the filing of lawsuits and grievances do constitute a

constitutionally protected activity. *See Bennett*, 343 F.3d at 137. However, Mr. Ebron does not allege any specific retaliation by any specific defendant. His claim that Defendant Feliciano "retaliated against [him]" is wholly conclusory and unsupported by any particular factual claims. Mr. Ebron's claim that "all defendant's [sic] named," Am. Compl. [doc. #7] at 3, kept him from properly preparing for his parole hearing identifies no wrongdoing by any of them. The only mention of Warden Sieminski comes in Mr. Ebron's statement that his letters "to the Conn. State Police and affirmative action" were returned to the warden. *Id.* Defendant Lantz is only mentioned twice: First, Mr. Ebron says he filed "grievances to the administration at Carl Robinson Correctional Institution, Commissioner(s) office (Theresa Lantz) and the Dept. of Corr. Intelligence Division." *Id.* at 2. Second, Mr. Ebron says he wrote a letter to Governor Rell, which was forwarded to Defendant Lantz, who then referred the issue back to Parole Officer Rutkis. The only specific allegations of wrongdoing in the complaint are against non-parties. Mr. Ebron accuses two dorm officers of verbally harassing him and claims that Parole Officer Rutkis brushed him off when asked why he was not able properly to prepare for his parole hearing.

In its current form, Mr. Ebron's complaint is insufficient to state a claim for retaliatory conduct. Therefore, the Court dismisses without prejudice Mr. Ebron's retaliation claims. The Court gives Mr. Ebron 30 days to further amend his complaint. If he chooses to do so, he must make clear (1) the conduct engaged in by Defendants that he believes was done in retaliation for his lawsuits and grievances, and (2) the personal involvement of each Defendant in interfering with his rights. Mr. Ebron must demonstrate these with specificity.

### D. Failure to Protect

Mr. Ebron claims that his constitutional rights were violated when three gang members were

sent back to his dormitory, even though they were aware that he was a confidential informant. The Court notes that Mr. Ebron's failure-to-protect claims are vague and conclusory, just like his retaliation claims. Accordingly, the Court dismisses without prejudice Mr. Ebron's failure-to-protect claims, giving him 30 days to amend his complaint so that it states with specificity (1) the actions or inactions that he believes have subjected him to danger, and (2) the personal involvement of each Defendant.

## IV

Defendants' motion to dismiss [**doc. #14**] is GRANTED. It is granted with prejudice as to all claims against Defendants in their official capacities; all claims for good-time credits; and all claims for verbal harassment. It is granted without prejudice as to all claims against Defendants for retaliation and for failure to protect Mr. Ebron from harm. Mr. Ebron may file an amended complaint against Defendants Lantz, Sieminski, and Feliciano in their individual capacities if he can allege facts demonstrating an actual injury as described above and the personal involvement of any Defendant included in the amended complaint. He shall file any amended complaint **by February 3, 2006**.

IT IS SO ORDERED,

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut, January 3, 2006.**