UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CURTISS EBRON              :
                           :      PRISONER
v.                         :      Case No. 3:04CV1375(MRK)
                           :
THERESA LANTZ, et al.      :

RULING AND ORDER

Plaintiff Curtiss Ebron ("Mr. Ebron") filed this action challenging conditions of his confinement at the Carl Robinson Correctional Institution. The Court construed the first Amended Complaint [doc. # 7] to contain four claims: (1) failure to award good time credit, (2) verbal harassment, (3) retaliation, and (4) failure to protect him from harm. On January 4, 2006, the Court granted the Defendants' Motion to Dismiss [doc. # 14] with prejudice as to Mr. Ebron's claims for failure to award good time credit and verbal harassment and without prejudice as to the retaliation and failure to protect claims. *See* Ruling and Order [doc. # 20]. The Court instructed Mr. Ebron that he could file an amended complaint against Defendants Lantz, Sieminski, and Feliciano in their individual capacities if he could allege facts that would demonstrate an actual injury (as described in the Court's prior Ruling and Order [doc. # 20]) and that would show the personal involvement of each Defendant in Mr. Ebron's alleged injury. The Court directed Mr. Ebron to file any amended complaint by February 3, 2006. *See id.* at 9.

After two requests for extensions of time, Mr. Ebron filed a second Amended Complaint [doc. # 23] on March 30, 2006. The Defendants object to the second Amended Complaint on the ground that Mr. Ebron failed to comply with the Court's instructions in its January 4, 2006 Ruling and Order by attempting to include four new defendants, as well as claims regarding his confinement

at the Corrigan-Radgowski Correctional Center ("Corrigan"). The Court agrees with Defendants and therefore, SUSTAINS the Defendants' Objection to Amended Complaint [doc. # 25]. However, rather than dismiss the second Amended Complaint in its entirety for this reason, as Defendants urge, the Court instead will dismiss the claims in the second Amended Complaint against the four new defendants as well as the claims involving Corrigan.

Amended complaints are governed by Rule 15(a) of the *Federal Rules of Civil Procedure*, which provides that permission to amend a complaint "shall be freely given when justice so requires." Underlying this rule is an assumption that the amended complaint will clarify or amplify the original cause of action. *See Klos v. Haskell*, 835 F. Supp. 710, 715 n.3 (W.D.N.Y. 1993) ("An amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty as the same cause of action originally pleaded or attempted to be pleaded, and it is a perfection of an original pleading rather than the establishment of a new cause of action.") (internal quotation marks omitted), *aff'd*, 48 F.3d 81 (2d Cir. 1995). That assumption is evident in this case. The Court specifically permitted Mr. Ebron to file a second amended complaint to clarify or amplify the retaliation and failure to protect claims against Defendants Lantz, Sieminski, and Feliciano. The Court did not grant him permission to add new, unrelated claims or new defendants, and Mr. Ebron never sought that permission.

The Court instructed Mr. Ebron that in any amended complaint, he must "make clear (1) the conduct engaged in by Defendants that he believes was done in retaliation for his lawsuits and grievances, and (2) the personal involvement of each Defendant in interfering with his rights. Mr. Ebron must demonstrate these with specificity." *Ebron v. Lantz*, No. 3:04CV1375(MRK), 2006 WL 18827, at *5 (Jan. 4, 2006). Similarly, the Court instructed Mr. Ebron that he must allege "with

2

specificity (1) the actions or inactions that he believes have subjected him to danger, and (2) the personal involvement of each Defendant." *Id.*

The only new allegation Mr. Ebron makes in the body of his second Amended Complaint against Defendants Lantz, Sieminski, and Feliciano is that they transferred him in retaliation to Corrigan, from which he alleges he had previously been removed for his own safety on June 9, 2003. However, Mr. Ebron claims that he was transferred to Corrigan from the Osborn Correctional Institution. The Court therefore cannot see how the Warden of Carl Robinson Correctional Institution or a Major at the Carl Robinson Correctional Institution could have effectuated such a transfer. Nor has Mr. Ebron specifically alleged how Defendant Sieminski or Feliciano accomplished his transfer. Nor has Mr. Ebron specifically alleged how Defendant Lantz was involved in this transfer, or even what protected activity prompted the alleged retaliatory transfer. The balance of Mr. Ebron's new allegations concern new claims and incidents occurring at Corrigan, which involve different actors than those Mr. Ebron is suing in this lawsuit. Therefore, the Court will dismiss all claims against Defendants other than Lantz, Sieminski, and Feliciano, as well as all claims involving Mr. Ebron's transfer to Corrigan and treatment while there. If he wishes to pursue such claims, Mr. Ebron must do so in another action.

Defendants have not sought to dismiss the second Amended Complaint on the ground that Mr. Ebron did not provide the specificity required in the Court's prior ruling. Nevertheless, the Court notes that, while Mr. Ebron did not include more detail in the body of his second Amended Complaint, he did attach to that amended complaint several exhibits that clarify and amplify his retaliation and failure to protect claims against Defendants Feliciano and Sieminski.

Mr. Ebron appended an inmate request form, several letters, and two grievances to his second

3

Amended Complaint, all of which pertain to the claims he raised in his first Amended Complaint. *See* [doc. # 23] 9-17. On July 23, 2003, Mr. Ebron submitted an inmate request to Major McDonald (not a party to this suit) for reassignment from his current dormitory to dormitory 4-B or 6-B, on account of alleged problems Mr. Ebron was experiencing with a corrections officer assigned to his dormitory. *See id.* at 9-10. The exhibits reveal the following chain of events.

On July 27, 2003, Mr. Ebron wrote a letter to Defendant Feliciano complaining that, instead of being reassigned to one of the requested dorms, he was reassigned to 3-B (which he called Three Vietnam), a dormitory that he alleged was widely known for its violence and disruptiveness. *See id.* at 11. Mr. Ebron's July 27, 2003 letter to Defendant Feliciano states that three days before, "several outbreaks took place, such as horse playing fights and extremely loud yelling. The second shift officers were clearly intimidated and afraid to come into the unit." *See* second Am. Compl. [doc. # 23] at 11. That letter also states that on the following day, "several staff members . . . . went on to say that I should do what ever I can to get moved out of this unit" on account of its dangerous character. *See id.* Furthermore, Mr. Ebron stated in his letter that this reassignment was in retaliation for recent complaints Mr. Ebron had made against certain corrections officers for violating his 14th Amendment rights. Mr. Ebron also claimed that he was denied his choice of reassignment on account of his race, and that other white or Hispanic inmates were more frequently granted their choice of housing reassignments than black inmates.

Defendant Feliciano received Mr. Ebron's letter on July 29, 2003, and met with him on that date. *See id.* at 12. In a follow-up letter, dated August 1, 2003, Defendant Feliciano stated that Mr. Ebron had been unable at the time of their meeting to "provide . . . any specific information . . . to substantiate [his] claims." *Id.* Defendant Feliciano concluded that, "[b]ased on the lack of

4

information and evidence at this point in time," Mr. Ebron failed to show discrimination or retaliation on the part of prison staff. *Id.* Defendant Feliciano's letter does not, however, mention anything regarding the safety issues that Mr. Ebron had raised in his July 27 letter with respect to his housing reassignment.

On August 8, 2003, Mr. Ebron responded to Defendant Feliciano's letter. *See id.* at 13. Mr. Ebron described several fights that had occurred in his vicinity of the dormitory in the previous week, including one in which "Bed # 112 had a long sharp object (Shank) right next to [Mr. Ebron's] head threatening bed # 176 and saying that he would kill the inmate." *Id.* Mr. Ebron also stated that a correctional lieutenant, whom he alleges referred to dormitory 3-B as "Little Vietnam," told him that he should not have been moved from building 5.[1] Finally, Mr. Ebron reiterated his allegation of disparate treatment, by drawing Defendant Feliciano's attention to the reassignment request of a white inmate; while Mr. Ebron does not affirmatively state in his letter to Defendant Feliciano that this white inmate was granted his request to be reassigned to building 4-B, that is the implication of Mr. Ebron's example.

On August 12, 2003, Mr. Ebron filed an inmate grievance, in which he claimed that the correctional staff was deliberately indifferent to his safety and prejudiced against him. *See id.* at 16. The grievance received a response on September 8, 2003. The response stated that Mr. Ebron's allegations had been investigated and were determined to be unfounded. Finally, Mr. Ebron filed another grievance on September 12, 2003, alleging that there had been "<u>no</u> proper investigation conducted by staff." *See id.* at 17. Mr. Ebron also has provided an August 20, 2003, letter from

---

[1] The import of this statement is unclear, since Mr. Ebron had been housed in building 2 at the time of his request for reassignment, and had only requested to be moved to either building 4-B or 6-B.

5

prison consultant Christopher Shuckra to Defendant Sieminski, reiterating Mr. Ebron's claims of retaliation and concerns for his personal safety, and requesting a housing change for Mr. Ebron. *See id.* at 14.

Defendant Sieminski appears to have been sent copies of the letters between Mr. Ebron and Defendant Feliciano and was the direct recipient of the letter from Mr. Schuckra. Moreover, Mr. Ebron has alleged that it was widely-held knowledge among correctional officers that dormitory 3-B was particularly dangerous and even alleges that the correctional officers assigned to that dormitory refused to enter it out of fear of physical harm and cautioned him directly that he should attempt to gain reassignment.

Rule 10(c) of the *Federal Rules of Civil Procedure* provides: "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). The Second Circuit, "[r]elying on Rule 10(c), [has] held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). After examining the documents attached to Mr. Ebron's complaint as exhibits, the Court concludes that Mr. Ebron has complied with the Court's direction that he provide specifics regarding his claims against Defendants Feliciano and Sieminski.

The Court hastens to add that it does not suggest in any way that Mr. Ebron has stated legally sufficient claims against these Defendants. There is no need for the Court to do so at this point, because Defendants have not sought to dismiss his complaint on that ground. As to Commissioner Lantz, however, Mr. Ebron has not provided any further supporting detail. Thus, the Court

concludes that Mr. Ebron has not complied with the Court's direction as to this Defendant in that he has not provided any details showing her personal involvement in the claims he alleges. Since Mr. Ebron has already had two chances to correct this defect, the Court dismisses all claims against Commissioner Lantz with prejudice.

One final point bears note: liberally construing his first Amended Complaint [doc. # 7], Mr. Ebron alleges a pattern of race discrimination in personnel actions by the staff at Carl Robinson Correctional Institution. "To prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). A plaintiff must also demonstrate that "the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that . . . his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Phillips*, 408 F.3d at 129 (citing *Shaw v. Murphy*, 532 U.S. 223, 225, 149 L. Ed. 2d 420, 121 S. Ct. 1475 (2001)) (alteration in original).

While Mr. Ebron failed to point to facts substantiating that allegation in regards to housing reassignments in his initial and first amended complaints, he has since included facts in the second Amended Complaint [doc. # 23] that may, if proved, tend to support such an allegation. *See, e.g.*, second Amended Complaint [doc. # 23] at 11, 13, 16, Ex. A (Inmate Request). If proved, the Court cannot see any "legitimate penological interest" in discriminating on the basis of race in the granting of housing reassignments. While the Court did not construe Mr. Ebron's first Amended Complaint as containing a claim of race-based discrimination, further inspection and the amplification and clarification provided by the materials in the second Amended Complaint do reveal that Mr. Ebron

7

did indeed make such an allegation initially.

Accordingly, Defendants' Objection to Amended Complaint [doc. # 25] is **SUSTAINED** in part.  All claims involving Mr. Ebron's experiences outside Carl Robinson Correctional Institution, as well as all claims against James Murdoch, Line Officer Brostex, Captain Alderucci, and Michael Lajoie exceed the scope of the Court's order and are **DISMISSED** without prejudice.  Mr. Ebron may pursue these claims in another action.  Mr. Ebron's retaliation, failure to protect, and equal protection claims against Defendant Lantz are **DISMISSED** with prejudice.  Mr. Ebron's remaining claims are against Defendants Feliciano and Sieminski only and they consist of claims for retaliation, failure to protect, and equal protection only.   Defendants  Feliciano and Sieminski shall have until **November 27, 2006** to answer or otherwise move with respect to such claims.

IT IS SO ORDERED,


/s/      Mark R. Kravitz
United States District Judge


Dated at New Haven, Connecticut: **November 6, 2006.**